## In re LAUDY'S WILL.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

1. WILLS—PROBATE—NEW TRIAL OF ISSUES TRIED BY JURY.

Where an issue of fact in a proceeding for the probate of a will has been tried at a trial term of the supreme court, pursuant to a direction, after modification of the surrogate's decree (Code Civ. Proc. § 2588), a motion for a new trial may be made at such trial term, and need not be made at the special term, where the motion for final judgment is made; Code Civ. Proc. §§ 2548, 2588, providing that a new trial may be granted by the supreme court as in an action, if the trial took place at a trial term of that court; and sections 999, 1003, authorizing a new trial at the same term at which a trial by jury was had of questions of fact in an action triable by the court, and providing that when the trial judge neither entertains a motion for a new trial nor directs exceptions taken at the trial to be heard by the appellate division in the first instance, a motion for new trial can be made only at the term where the motion for final judgment is made.

2. SAME—ACKNOWLEDGMENT OF SUBSCRIPTION—EVIDENCE.

Evidence was insufficient to sustain the finding of the jury that testatrix acknowledged her subscription to her will, where she folded and held the paper so that neither witness could see the signature so as to read it, or be able to identify it, or to say it was a signature.

Appeal from trial term, New York county.

Application for the probate of the will of Kate L. Laudy, deceased. From an order denying a motion for a new trial on the minutes, after a trial by a jury on questions of fact as to the execution of the will, such trial having been ordered by the court of appeals (42 N. E. 1061), the contestant Kate P. U. Elliott appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Daniel G. Rollins, for appellant.

H. B. Closson and H. P. Vernon, for respondents.

WILLIAMS, J. The will was presented for probate to the surrogate of the county of New York. The surrogate made a decree denying probate of the will. On appeal the general term of the supreme court reversed the surrogate's decree, and made a decree admitting the will to probate. 29 N. Y. Supp. 136. On appeal the court of appeals modified the decree made by the general term of the supreme court so as to direct a trial by a jury at a trial term of the supreme court of certain questions of fact arising upon the issues between the parties. 42 N. E. 1061. The trial of these questions of fact was had in May, 1896, and the jury found that the instrument presented for probate was not subscribed by the testatrix in the presence of the witnesses, but that she did acknowledge her subscription to each of the witnesses. At the time the verdict was rendered, the appellant moved to set aside the verdict and for a new trial as to the second question of fact, on the ground that the verdict was against the evidence and against the law, and upon each and every ground specified in section 999 of the Code of Civil Procedure. This motion was denied, and from the order

denying the motion this appeal is taken. It is first contended by the respondent that the court had no power to entertain the motion, and, as a consequence, the order denying it was not erroneous, and should be affirmed. The claim is that a motion for a new trial in such a case could only be made, or entertained or granted by the court, at a special term, where the motion for final judgment was made. We do not regard this claim and contention as well founded. It seems to us the practice in this class of cases is very clearly prescribed by the various provisions of the Code of Civil Procedure. Section 2588 provides that, "after the trial, a new trial may be granted as prescribed in section 2548 of the act." Section 2548 provides that "a new trial may be granted if it [the trial] took place at a trial term of the supreme court, by the supreme court, in a case where a new trial of specific questions of fact tried by a jury pursuant to an order for such trial, made in an action would be granted." This section very clearly means that the new trial in this special proceeding may be granted by the same branch of the supreme court, at the same time and upon the same grounds that it would be granted in a case where questions of fact were ordered to be tried before a jury in an action. Any other construction would be forced and unusual. The provisions as to new trials in such cases in an action are found in section 1003, and incidentally in section 999. The latter section provides generally for a motion for a new trial in case of a trial before a jury upon the minutes of the court, at the same time at which the verdict is rendered. And then section 1003 makes these provisions applicable to cases where questions of fact are ordered to be tried before a jury, but provides specially that such new trial may be granted as to some of the questions tried and denied as to other questions tried at the same time, and that errors committed during the trial may be disregarded when substantial justice does not require a new trial to be granted; and closes with the provision that "when the judge who presided at the trial, neither entertains a motion for a new trial, nor directs exceptions taken at the trial, to be heard at a term of the appellate division of the supreme court, a motion for a new trial can be made only at the term, when the motion for final judgment is made, or the remaining issues of fact are tried, as the case requires." These provisions seem to us to be clear and unmistakable, and to provide for the practice that was adopted in this case. The order denying a motion for a new trial was appealable, under subdivision 2, § 1347, of the Code.

We are called upon, therefore, to examine the appeal upon its merits, and to determine whether the order was properly made denying the motion for a new trial. The principal contention by the appellant is that the evidence was insufficient to sustain the finding of the jury that the testatrix acknowledged her subscription to the will to each of the witnesses. The questions to which these answers were made were in the precise language of the statute prescribing the requirements necessary for the proper execution of a will. These provisions are that such subscription shall be

made by the testator in "the presence of each of the attesting witnesses, or shall·be acknowledged by him to have been so made, to each of the attesting witnesses." 2 Rev. St. p. 63, § 40. The jury found, and the fact was not controverted, that the subscription·by the testatrix was not made in the presence of the witnesses. The paper had been subscribed before the witnesses appeared. The question is whether the subscription by the testatrix was acknowledged by her to have been made to each of the witnesses. The jury answered "Yes," and the appellant claimed there was no evidence to support that answer and finding. There was evidence to show that the will, when presented to the witnesses, had already been subscribed by the testatrix, and that she said, in the presence of both witnesses, that the instrument was her will. There was evidence from which it might be inferred that she told them she had subscribed the will. The real controversy was over the question as to whether she exhibited the signature to both of the witnesses, and whether it was visible to them. It is well settled that the acknowledgment of the subscription is not sufficient within the statute, unless the signature is visible to the witnesses. In re Laudy's Will (this same case) 148 N. Y. 407, 42 N. E. 1061, and cases therein cited. The courts say that the subscribing witnesses to a will are required for the purpose of attesting and identifying the signature of the testator, and for this purpose it is essential either that the witnesses shall see the testator subscribe his name, or that, with the signature visible to him and to them, he shall acknowledge it to be his. Lewis v. Lewis, 11 N. Y. 220; In re Mackay's Will, 110 N. Y. 611, 18 N. E. 433; In re Laudy's Will, supra.

In Lewis v. Lewis, supra, it appeared that the paper was so folded that they did not see any subscription. The court held the will not properly executed, and said:

"If the party does not subscribe in their [the witnesses'] presence, then the signature must be shown to them, and identified, and recognized by the party, and in some apt and proper manner, by him, as his signature. The statute is explicit, and will not be satisfied with anything short of a substantial compliance with its terms."

In Re Mackay's Will, supra, it appeared that the paper was so folded that the witnesses could see no part of the writing except the attestation clause, and they did not see either his signature or his seal. For this reason the will was held not to have been properly executed. The court used the language first quoted by us above, "Subscribing witnesses to a will are required by law," · etc., and these cases are cited and approved in Re Laudy's Will, above.

If this language of the courts is to have its fair and reasonable construction, it means that in case of an acknowledgment the signature must be so far visible to the witnesses as that they can see and know that the name purporting to be subscribed is the name of the testator, otherwise they cannot identify it as that of the testator; and where the signature is so far intentionally concealed

and covered up by the testatrix that the witnesses can merely see
that there is some writing where the signature is claimed to have
been, but cannot read the writing, we fail to see how it can be
fairly said that the signature is visible to the witnesses in such a
sense as to constitute a compliance with the statute and the con-
struction given to its language by the courts. In this case it ap-
pears that the testatrix held the will down upon the table with both
hands, and so folded as that neither the writing nor the signature
were visible, except as the edge of the fold was accidentally raised,
so that Dr. Porter, one of the witnesses, observed that there was
some writing where it now appears the signature of the testatrix
was written. To quote from the doctor's evidence:

"I don't know just exactly how it [the paper] was held, but it was held in such
a way that all the writing was covered up practically, except that I could just
discover that there had been writing above where I signed. There was writing
above where I signed, but it was covered up so I could not tell what it was.
Whether the writing was on the upper sheet folded down or under it on the other
sheet I cannot swear. She held the paper folded with the intention, very dis-
tinctly, I think, of concealing everything that was written above where I signed,
putting both hands upon it; but as I stood up to sign it I saw there was writing
above where I signed. I think probably that it was by the springing up of the
paper that I was able to see it. It was so folded as to conceal all the writing ex-
cept what now seems to be the lower part of the 'y' in her last name, Laudy. I
do not think that I could now swear that I saw even this part of the 'y' when I
signed as a witness. I saw that she was anxious that I should not see what the
writing was, and I did not take any pains to see it. It was in her attempt to fix
the paper, holding it down, that I saw there was writing there,—that there was a
written document of some kind. There was writing above where I signed that
she was evidently trying to cover up."

It will be remembered that the subscription to the instrument
was not made where it should have been, at the end of the will,
opposite the seal placed there, and before the attestation clause,
but at the bottom of the attestation clause; so that this witness
could hardly have supposed at the time he signed that the writing
he did see was the signature of the testatrix. This is all the evi-
dence of this witness upon which the finding of the jury in ques-
tion can rest. The evidence of the other witness was clearly in-
sufficient to support any such finding as the jury made, and need
not be referred to in detail. The case was by the court of ap-
peals sent to a jury for trial, not upon any idea that the other
witness testified to a proper execution of the will, for she dis-
tinctly testified it was not so executed, but upon the theory that
the doctor's evidence may have been sufficient to establish a prop-
er execution of the will; and the credibility of the two witnesses
was a question which should be determined by the jury. The rec-
ord which was before the court of appeals is not before us now,
and we do not know that the evidence of the doctor there was the
same that it appears in the record to have been on the trial before
the jury. We assume it must have been different, because, upon
the evidence as it now stands, it does not seem to us the court of
appeals could have believed there was any question for the jury,
even upon the evidence of the doctor.

It is true that in some cases a will may be found to have been properly executed in view of the circumstances and the inferences to be drawn from the evidence, even though both witnesses fail to testify to a proper execution of the will. Failure of the memory of the witnesses may be disregarded, and the facts found from other evidence in the case, and the inferences to be drawn therefrom. In this case, however, there is an utter absence of any facts or circumstances from which an inference can be drawn that the signature of the testatrix was visible to the witnesses or either of them. On the contrary, the evidence affirmatively shows that the testatrix studiously and persistently prevented the witnesses from seeing what was written, and the conclusion is irresistible that neither witness did see the signature so as to read it, or be able to identify it, or to say it was or purported to be a signature at all.

It cannot be said that the fact that the witnesses signed the attestation clause was a circumstance tending to show a proper execution of the will, because it appears without contradiction that the witnesses were not permitted to read, or even see, the contents of that clause.

We are unable to perceive how, under the evidence in this case, the jury were justified in making the answer and finding complained of. It is unnecessary to consider the alleged error in the charge in view of the conclusion at which we have arrived upon the main question in the case.

Our conclusion therefore is that the order denying a motion for a new trial was improperly made, and should be reversed, and a new trial granted as to the second question of fact; with costs to abide the event. All concur.